IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00216-WDM-KMT

RODNEY DeWALT,

      Plaintiff,

v.

FLORENCE LARSEN, individually, and
KAL ZEFF ESTATE AND SUCCESSORS,

      Defendants.

---

## ORDER and
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**


      This case comes before the court on Defendants' "Motion to Dismiss" ("Mot." [Doc. No.

4, filed February 21, 2008].)  Plaintiff responded to the motion with, "Plaintiff's Reply in

Opposition to Defendants Motion to Dismiss" ("Rsp. 1" [Doc. No. 14, filed March 10, 2009].)

Defendants filed  "Reply in Support of Motion to Dismiss" ("Reply" [Doc. No. 17, filed March

14, 2008].)  Plaintiff then filed two identical documents entitled "Plaintiff's Reply in Opposition

of Motion to Dismiss" [Doc. Nos. 19 and 21, filed March 20 and 25, 2008, respectively].[1]

---

[1]Plaintiff apparently is filing many of his pleadings by facsimile to the court.  He then
later sends the original pleading to the court by U.S. Mail.  This causes two entries on the docket.

Also before the court is defendant Kal Zeff Estate's ("Estate") "Motion for Summary Judgment as to Claims Asserted Against the Kal Zeff Estate" ("Mot. S.J." [Doc. No. 5, filed February 21, 2008]) to which plaintiff responded on March 10, 2008 with "Plaintiff's Reply in Opposition to Defendants Motion Summary Judgment Against Kal Zeff Estate." [Doc. No. 15] Defendant Estate filed a "Reply in Support of Motion for Summary Judgment as to Claims Asserted Against the Kal Zeff Estate" [Doc. No. 16, filed March 14, 2008]. Plaintiff filed "Plaintiff's Reply in Opposition of Motion for Summary Judgment as to Claims Asserted Against the Kal Zeff Estate" [Doc. No. 20, filed March 20, 2008]. Plaintiff's Doc. No. 22, filed March 25, 2008, appears to be a copy of Doc. No. 20.

Related to these motions and also considered herein is "Plaintiff's Motion to (sic) Leave to File First Amended Complaint" ("Mot. Amd 1" [Doc. No. 25, filed June 5, 2008]) and another motion which appears to be a copy. [Doc. No. 27, filed June 9, 2008.] To each motion, the plaintiff attached the same Proposed Amended Complaint (hereinafter "P.Amd.Compl."). "Defendants' Response Opposing Plaintiff's Motion to (sic) Leave to File First Amended Complaint" [Doc. No. 30] was filed June 25, 2008. Plaintiff filed "Plaintiffs Response to Defendants Opposing Plaintiffs Motion to (sic) Leave to File First Amended Complaint [Doc. No. 35, filed July 2, 2008]. The court construes this document as a Reply. He filed a duplicate of this Reply on July 7, 2008 [Doc. No. 38].

## I.      *Background*

Plaintiff's Complaint sets forth an abbreviated factual summary of his 2005 Denver District Court case and witnesses who he claims committed perjury during the trial. The plaintiff

attaches various court documents from Denver District Court case number 05-CV-682 to his complaint in this case. (Compl., Exh. D). The defendants attach to their Motion to Dismiss several other court documents from the same Denver case. (See Mot., Exh. A, "Findings of Fact and Conclusions of Law and Judgment"[hereinafter "Judgment"], Exh. B, DeWalt's "First Amended Answer and Counterclaims and Third Party Complanit (sic)" and Exh. C, Court of Appeals No. 06CA0086, eleven page Opinion affirming Judgment in case no. 05-cv-682 [hereinafter "Opinion"].) This court will "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*. 127 S.Ct. 2499, 2509 (2007); *See* 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007). Fed. R. Evid. 201 provides the court may take judicial notice of "adjudicative facts." The court will take judicial notice of the documents generated and filed in Denver District Court Case No. 05-cv-682 and Colorado Court of Appeals Case No. 08CA0086, as they have been attached to the Complaint and the motions and responses of the parties, as adjudicative facts which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In 2004, Plaintiff DeWalt and his company, DeWalt Entertainment, Inc. ("DEI"), entered into a ten-year lease with the Quebec Iliff Joint Venture ("QJV") for a commercial space in which Mr. DeWalt intended to build a nightclub. (Mot., Exh. A., Judgment at 1.) Mr. DeWalt signed the lease as a guarantor. (*Id.*) Kal Zeff (deceased) and Florence Larsen were the owner and employee of QJV, respectively. (*Id.* at p. 2.)

The lease contained several rent waivers and provisions designed to allow DEI to build out the leased premises as a nightclub. (*Id.*) After several additional rent concessions on the part of QJV and cash assistance from QJV and Mr. Zeff with the cost of build out, QJV eventually filed a Forcible Entry and Detainer action (Case No.05-CV-682) against DEI and Mr. DeWalt to recover possession of the premises. Mr. DeWalt and his company relinquished possession of the premises on January 3, 2005 and thereafter filed Counterclaims against QJV and a Third Party Complaint against Mr. Zeff and Ms. Larsen, individually. (Mot., Exh. B.)

Mr. DeWalt asserted eleven claims for relief against Mr. Zeff and/or Ms. Larsen in the Denver District Court action, including among others, Intentional Infliction of Emotional Distress/Outrageous Conduct, Fraud and Misrepresentation, and Violation of 42 U.S.C. §§1981 and 1982. (*Id.*) DeWalt declared that subsequent to Ms. Larsen meeting Mr. DeWalt in person and thereby learning that he was an African American man, QJV and Ms. Larsen "stopped cooperating" with him (*Id.* at ¶¶17, 18, 80, 81) and Ms. Larsen "began making statements that she did not believe DeWalt had the financial ability to complete the nightclub." (*Id.* at ¶20.) DeWalt specifically alleged Larsen and Zeff made misrepresentations regarding the air conditioning (Id. at ¶ 65); interfered with the installation of a required sprinkler system (*Id.* at ¶¶12, 13); and required the deposit of substantial amounts of money not required in the lease (*Id.* at ¶20). DeWalt also alleged that it was QJV, through the actions of Ms. Larsen, who breached the lease agreement and caused him damages.

Denver District Court Judge Catherine Lemon heard a multi-day trial on the parties' claims, counterclaims and third-party claims on December 27 - 30, 2005. (Mot., Exh. A,

4

Judgment at 1.)  The court found that neither Ms. Larsen nor Mr. Zeff obstructed or interfered with Mr. DeWalt's build out (*Id.* at 2) and that Mr. DeWalt and DEI were in default under the terms of the lease. (*Id.* at 3.)  The court found DEI had not paid rent for a one year period and awarded QJV damages in the amount of $138,998.00 plus costs and attorneys fees. (*Id.* at p.3.) The court further found that QJV, Mr. Zeff and Ms. Larsen were "not at fault for the failure of the project and the failure of the relationship," and denied all counterclaims and third-party claims. (*Id.* p. 4.)

Mr. DeWalt, appearing *pro se*, thereafter appealed the unfavorable trial court decision. He argued the court erred in: (1) finding he and DEI had breached the lease; (2) finding that QJV, Zeff and Larsen did not breach the lease; (3) finding that QJV, Zeff and Larsen did not interfere with DeWalt's ability to build out the premises; (4) finding that there was no error on the part of QJV, Zeff and Larsen for demanding proof of cash expenditures by DeWalt; and, (5) failing to administer an oath to him at trial. (Mot., Exh. C at 3 - 10.) The Colorado Court of Appeals affirmed Judge Lemon's rulings on every claim. (*Id.*)

## II.    *Procedural History*

The Complaint in this case appears to make the following allegations: (1) Judge Lemon (not charged as a defendant in this case) was not "fair and honest" in conducting the previous 2005 trial (Compl. ¶¶ 1, 28, 29, 30); (2) because he is African American, plaintiff Dewalt was not given due process in the underlying case (*Id.* ¶ 5); (3) two defense witnesses had a history of deception and lies and the court should not have  believed those witnesses at the trial (*Id.* ¶¶ 3, 4, 7, 18, 28 ); (4) the property had several flaws which were unknown to the plaintiff when he

signed the lease (*Id.* ¶¶ 10, 11, 13,); and (5) DeWalt was evicted on the basis of Tracey Garin's[2]

misrepresentations (Compl. ¶¶ 24, 26, 27).   The Complaint does not state any basis for relief or

cite any reference to the theory under which the plaintiff was proceeding other than in the caption

which references, "Title 42 1981 and 1982, Violation of Fourteenth Amendment Section 1;

Denial of Due Process Civil Rights Violation Act, Intentional Infliction of Emotional Distress,

Reckless Conduct."

Defendants Larson and Ms. R. Joyce Zeff, the personal representative of the Estate, assert

that plaintiff's constitutional claims of racial bias are levied only against non-defendants who

were participants in the state court case, including Judge Lemon, and therefore fails to state a

claim against the named defendants in this case.   They also allege plaintiff seeks to have this

court impermissibly review the 2005 trial therefore rendering plaintiff's claims barred by the

doctrines of *res judicata* and *Rooker-Feldman*.   (Mot. at 1-2.)

### III.   Standard of Review

#### A.   Pro Se Plaintiff

The plaintiff is proceeding *pro se*.   The court, therefore,   "review[s] his pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

*See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se*

complaint "to less stringent standards than formal pleadings drafted by lawyers").   However, a

---

[2]Tracey Garin was a witness at the 2005 trial.  Mr. Garin is not a defendant in this federal
case, nor was he a defendant in the state case.

*pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiffs' *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.      Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's

favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated the "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982))

### C.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

## IV. *Analysis of Complaint*

### A. *Fed. R. Civ. P. 8*

Rule 8(a) requires that a plaintiff's complaint contain "a short and plain statement" of the grounds upon which his claim is based, a short and plain statement showing his entitlement to relief, and a demand for judgment. Rule 8 by its language establishes "a ceiling (the complaint must be no more than 'a short and plain statement')" and not "a floor (the complaint must at least be a 'short and plain statement')." *Toevs v. Reid,* 2008 WL 598287, 1 (10th Cir.2008) (unpub); *Frazier v. Ortiz*, 2007 WL 10765, 2 (10th Cir. 2007) (unpublished), cert. denied, --- U.S. ----, 127 S.Ct. 3011, 168 L.Ed.2d 735 (2007) (citing *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). The purpose of pleading

is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Triplett v. LeFlore County, Okl.*, 712 F.2d 444, 446 (10th Cir. 1983). Therefore, in addition to being short and concise, a pleading must be specific enough to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley*, 355 U.S. at 47; *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007); *Toevs v. Reid*, 2008 WL 598287, 1 (10th Cir., 2008).

Although Rule 8 is a de minimus requirement, *Alvarado* provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." 493 F.3d at 1215 n.2. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

In this case, the only legal basis for Mr. DeWalt's claims appears in his caption, as noted *infra*, citing civil rights and constitutional provisions and emotional distress caused by reckless behavior. The body of the Complaint, however, does not set forth even one fact which would support that either Florence Larsen or Kal Zeff discriminated against Mr. DeWalt in any manner whatsoever on the basis of his race. With respect to Mr. DeWalt's race, the only allegations in the federal complaint are that: "[t]he Plaintiff Rodney Dewalt who is African American did not receive the dignity to be sworn in as all the other Caucasian witnesses were and was not given due process as guaranteed in the constitution" (Compl. ¶ 5); "African Americans have not been

treated fairly by the court system . . ." (Compl. ¶ 8);  "Kal Zeff and his estate were from a privileged group. . ."  (Compl. ¶9); and "this judge proved that if you are African American you have no rights in her court and due process was denied" (Compl. ¶30.)  Further, he has not set forth any fact supporting that Ms. Larsen or Mr. Zeff engaged in any "reckless conduct" or that the plaintiff suffered any emotional distress which was inflicted by Ms. Larsen or Mr. Zeff, personally.

In evaluating a 12(b)(6) motion to dismiss, it is appropriate to look to whether the plaintiff has alleged each element necessary to establish a prima facie claim on which relief can be granted.  *See Ruiz*, 299 F.3d at 1182-83; *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 902-903 (10th Cir. 1997).  Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved.  *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

Even in light of the liberal reading the court has given to the *pro se* plaintiff, the Complaint is utterly devoid of any allegations which support any discrimination by the named defendants based on any prohibited factor, including the plaintiff's race.  The Complaint also wholly fails to set forth the personal participation necessary to support a civil rights or constitutional violation against Ms. Larsen or Mr. Zeff.

## B. *Rooker Feldman Doctrine*

Given that a review of a state court final judgment is necessarily in play, the specter of the *Rooker-Feldman* doctrine is also raised.  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).  The *Rooker-Feldman* doctrine bars

"cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is confined to cases, like this one, where the state-court loser files suit in federal court after the state proceedings became final. *Id.* at 291; *Sheriff v. Accelerated Receivables Solutions, Inc.*, 2008 WL 2487920, at *3 (D. Wyo. June 23, 2008)(unpublished). *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006)(holding that "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended")(quoting *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24-25 (1st Cir.2005)); *see also Wallin v. Arapahoe County Det. Facility*, 244 F. Appx. 214, 220 (10th Cir. 2007) (finding where the time to take an appeal from state court default judgment "passed well before" plaintiff filed his complaint, "the default judgment is final for *Rooker-Feldman* purposes"). Plaintiff Dewalt filed this federal case subsequent to the entry of the state court judgment and after rejection of his claims by the court of appeals. (Mot., Exh. C.) His state court proceedings are final.

The *Feldman* case examined circumstances where the two successive cases were not identical, but were inextricably intertwined. 460 U.S. at 483, n.16. *Feldman's* "inextricably intertwined" language broadened the reach of the original *Rooker* principle to include a prohibition on those plaintiffs who knew better than to ask that the federal court to declare the state judgment null and void, but who, in essence, seek just such relief under the cloak of

constitutional claims.    As Justice Marshall defined in his concurring opinion in *Pennzoil v.*

*Texaco Inc.*, 481 U.S. 1, 23 (1987):

> [I]t is apparent, as a first step, that the federal claim is inextricably intertwined
> with the state-court judgment if the federal claim succeeds only to the extent **that
> the state court wrongly decided the issues before it.** Where federal relief can
> only be predicated upon a conviction that the state court was wrong, it is difficult
> to conceive the federal proceeding as, in substance, anything other than a
> prohibited appeal of the state-court judgment.

*Id*. (emphasis added).  At the core and permeating every facet of Dewalt's complaint is the

allegation that Judge Lemon wrongly decided the state court case.  Mr. Dewalt's claims in this

case are inextricably intertwined with his state court action and the appeal from that action, even

though he seeks refuge under the shroud of a  constitutional cloak.  Therefore, the *Rooker-*

*Feldman* Doctrine deprives this court of jurisdiction to hear plaintiffs claims pursuant to Fed. R.

Civ. P. 12(b)(1).

## C.    *Res Judicata, Claim Preclusion and Collateral Estoppel*

The plaintiff's Complaint alleges numerous defects in the conduct of his 2005 Denver

District Court case.  Plaintiff Dewalt complains that the judge in that 2005 case was not fair

(Compl. ¶¶ 1, 30)[3], that the court improperly struck plaintiff's witnesses (Compl. ¶ 6), that the

court treated witnesses Garin and Larsen "like jewel(s)" (Compl. ¶ 4), that the court "refused to

consider the history of deception that followed [witness] Tracey Garin" (Compl. ¶ 28) and that

the court "refused to examine the lease and other important documents" during the trial (Compl.

---

[3]It is telling that the plaintiff begins and ends his list of allegations with the fact that he
believes the judge in his 2005 Denver District Court case was not fair.

¶ 29).    Sandwiched between the opening and closing paragraphs alleging that the judge in the

state court action was not fair, the Complaint recites at length facts and circumstances which

were all part of his lease dispute in the 2005 case. (Compl. ¶¶ 10-27.)  Plaintiff DeWalt does not

assert any additional facts which were not presented to the Denver District Court, but only claims

that the result of that trial was erroneous and the court improperly decided the case against him.

Plaintiff acknowledges in his response to the motion to dismiss that he is attempting to

persuade this court to review the activities of the state court and the state court of appeals.  For

instance he states,

> [T]he evidence at trial does not agree with the findings.  Plaintiff will show the
> inconsistencies of the evidence.  Plaintiff will show that the Defendants called two
> witnesses at trial, Florence Larsen, and Tracey Garin, that the two conspired and
> formed lie after lie. . . . Plaintiff will prove the rent was paid on December 2, 2004
> and was returned due to a statements (sic) made by Tracey Garin.

(Rsp. at 2.)    In Sections A - K of his response, the plaintiff rehashes the evidence at trial. (*Id. et*

*seq.*)  Finally, plaintiff concludes with "[t]he plaintiff will prove at court that the findings of this

court [Denver District Court] are flawed." (Rsp. at 7.)

Though sometimes used to refer to the narrower concept of claim preclusion, *res judicata*

traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called

collateral estoppel. *See e.g. Carter v. City of Emporia*, 815 F.2d 617, n 2 (10th Cir. 1987). "The

doctrine of *res judicata*, or claim preclusion, will prevent a party from relitigating a legal claim

that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v.*

*Gorelick*, 427 F.3d 821, 831 (10th Cir.2005).  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).  *Res*

*judicata*, under Colorado state law, "bars relitigation not only of all issues actually decided, but

of all issues that might have been decided." *Pomeroy v. Waitkus*, 517, P. 2d 396, 399 (1974);

*State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo.,1989). Since the underlying case

arose in the state of Colorado, Colorado law will determine the limits of *res judicata* in the

instant action.

"*Res judicata* constitutes an absolute bar only when there is in both the prior and

subsequent suits identity of subject matter, identity of the cause of action, identity of parties to

the action, and identity of capacity in the persons for which or against whom the claim is made."

*City of Westminster v. Church,* 445 P.2d 52, 55 (1968). In Colorado, the 'same claim or cause of

action' "is bounded by the injury for which relief is demanded, and not by the legal theory on

which the person asserting the claim relies." *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546,

549 (D. Colo. 1989); *Hildebrand v. Dart Indus., Inc.*, 640 F.2d 289 (10th Cir.1981) (action

barred by *res judicata* where plaintiffs attempted to cure statute-of-limitations defect in

fraudulent-inducement claim by adding count for fraudulent termination of distributorship

agreement).[4]

What constitutes the same transaction or series of transactions is "to be determined

pragmatically, giving weight to such considerations as whether the facts are related in time,

space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage."

---

[4]Federal law has almost identical requirements concerning the application of claim preclusion in the Tenth Circuit and requires: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

*Restatement (Second) of Judgments* § 24 (1982).  The two cases before the Court are identical

except for the arrangement of the parties in the state court action.  QJV (Mr. Zell's company) was

the plaintiff and DEI (Mr. DeWalt's company) and Rodney DeWalt were defendants in the 2005

state action.  The Estate and its successors and Florence Larsen were third party defendants.  The

subject matter was obviously the same – the year long association of Mr. DeWalt with Ms.

Larsen and Mr. Zeff or his estate surrounding a 2004 lease which eventually ended in eviction of

Mr. Dewalt and the award of damages against him.  As previously noted, Mr. DeWalt's eleven

claims against Ms. Larsen and Mr. Zell in the state Third Party Complaint contained the same

claims and grounds, including the civil rights allegations, which are alleged in this case.  The

primary difference in this federal action is that the plaintiff now claims that the state court

discriminated against him in the conduct of the underlying Denver District Court trial.

One of the main policy considerations underlying *res judicata* is the interest in bringing

litigation to an end.   *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir.

1997); *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 327 F. Supp. 2d 1252, 1258 (D. Kan.

2004).   The final "judgment puts an end to the cause of action, which cannot again be brought

into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen*, 333

U.S. 591, 597 (1948). *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371,

375, 378 (1940); *John v. United States,*  77 Fed. Cl. 788, 818 (Fed. Cl. 2007).   "By preventing

repetitious litigation, application of *res judicata* avoids unnecessary expense and vexation for

parties, conserves judicial resources, and encourages reliance on judicial action."  *Nwosun* at

1258.

It is time to put Mr. DeWalt's claims to an end. He was afforded a trial on the merits of his claims and a review by the state court of appeals. He is not entitled to invoke the whole process again in the federal system.

### D. Timeliness of Claims against The Estate of Kalman Zeff

The Estate moved for summary judgment on the basis that plaintiff failed to present a claim against the Estate within the time frame required by Colorado state law. The Estate claims that as to the eleven separate claims which were litigated in the state court action, the state court judgment precludes any claim against the Estate. (Mot. S.J. at 5.) The Estate claims as to any "new" claims which were not litigated in the 2005 state court action, the claims are barred by Colo. Rev. Stat. § 15-12-803(1)(a) and 804(1). This court has concluded there are no new claims contained in the plaintiff's complaint and recommends herein that the Complaint be dismissed because it is non-compliant with the Federal Rules of Civil Procedure, it fails to state a claim upon which relief can be granted, and all the claims are barred by the doctrines of *res judicata* and the holding of the *Rooker-Feldman* cases. Therefore, the issues in the Estate's Motion for Summary Judgment are subsumed in the court's ruling on the defendants' Motion to Dismiss.

### V. Motion to Amend Complaint

On June 5, 2008, the Plaintiff moved to amend his complaint. The plaintiff states as grounds for amending the complaint, "Plaintiff believes he has laid a foundation to prove Tracey Garin and Florence Larsen conspired together at trial to alter the constitution and deny Plaintiff a fair trial" and that "there has been a mountain of new evidence in regards to this case." (Mot. Amend ¶¶ 4, 6.) The Proposed Amended Complaint sets forth the claims in a more intelligible

manner, breaking up what was formerly only contained in his caption, into new paragraphs in the body of the pleading accompanied by conclusory allegations. In the background facts section, the plaintiff sets forth a number of new facts about Tracey Garin, a witness in the previous trial. ( e.g., P.Amd.Compl. ¶¶ 9, 10, 13 - 18) and claims Mr. Garin told plaintiff on the telephone, "Florence Larsen reneged on the deal to give him [Garin] the nightclub if he lied on the witness stand and gets DeWalt evicted, which he did." (P.Amd.Compl. ¶18.)

Unfortunately, neither the addition of the information about Mr. Garin, who is not named as a defendant in the Proposed Amended Complaint, nor the more comprehensible presentation of the claims for relief, saves the complaint from its fatal flaws. Plaintiff does not allege any different claims nor does the Proposed Amended Complaint involve any additional or substitute parties. Instead, he adds more "evidence" relating to the same transactions that gave rise to the 2005 state lawsuit. The Proposed Amended Complaint would still be barred by *res judicata*, collateral estoppel, failure to state a claim upon which relief can be granted and the *Rooker-Feldman* doctrine.

Pursuant to Fed. R. Civ. P 15(a), the Court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the Court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or <u>futility of amendment</u>." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)(emphasis added).

An amendment to a complaint is futile only if the Plaintiff can prove no set of facts in support of his amendment that would entitle him to relief. *E.g., Beckett v. United States*, 217 F.R.D. 541, 543 (D. Kan. 2003). A district court is clearly justified in denying a motion to amend as futile if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim. *See Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir.1999).

Because filing the Proposed Amended Complaint would be futile, it is hereby

**ORDERED**

1.      "Plaintiff's Motion to (sic) Leave to File First amended Complaint" [Doc. No. 25] as well as the duplicate motion [Doc. No. 27] are DENIED.


ADDITIONALLY, for all the foregoing reasons, I respectfully **RECOMMEND**

2.       Defendants' "Motion to Dismiss" [Doc. No. 4] be GRANTED; and

3.      Kal Zeff Estate's "Motion for Summary Judgment as to Claims Asserted Against the Kal Zeff Estate" [Doc. No. 5] be GRANTED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United*

20

*States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    Dated this 21st day of August, 2008.

**BY THE COURT:**

_____
Kathleen M. Tafoya
United States Magistrate Judge